UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROSARIA NILES and SALVATORE A. BONO,

                Plaintiffs,

                                  **REPORT AND**
                                  **RECOMMENDATION**
        -against-                      CV 09-3638(JFB)(ARL)

WILSHIRE INVESTMENT GROUP, LLC,
AMERICAN KEY, INC., TIERONE BANK,
GEOFFREY M. PARKINSON, LELAND C. SELBY,
JAMES LAMB, LAURA J. NILES FOUNDATION,
INC., HENRY E. NILES FOUNDATION, INC.,
UNITED STATES OF AMERICA/ CENTRAL
INTELLIGENCE AGENCY, U.S. ATTORNEY,
E.D.N.Y., AND CIA OFFICERS MITCHELL E.
KLINE, LYDIA SPELLMAN, JOHN T. MARTINEZ,
AND THEIR COMMANDING SUPERIOR CIA
OFFICERS JOHN DOE AND/OR JANE DOE,

                Defendants.
------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the court, on referral from District Judge Bianco, are the motions to dismiss of the

defendants (1) United States of America/Central Intelligence Agency, the United States

Attorney's Office for the Eastern District of New York, Mitchell E. Kline, Lydia Spellman, John

T. Martinez, and their commanding superior CIA officers, John and/or Jane Doe (the "Federal

Defendants"); (2) Geoffrey M. Parkinson, Leland C. Selby, James Lamb, Laura J. Niles

Foundation, Inc., and Henry E. Niles Foundation, Inc. (the "Foundation Defendants"); (3) TierOne

Bank[1] (defendant TierOne"); and (4) Wilshire Investment Group, LLC and American Key, Inc.

---

[1] By Affirmation, dated March 17, 2011, defendant TierOne Bank joins in the motions of
the Foundation Defendants and the Federal Defendants. (*Finkelstein Aff.*, dated March 17, 2011,
¶ 2.)

("defendants Wilshire and American Key") (collectively "defendants") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6); and the motions of defendants for a litigation injunction pursuant to 28 U.S.C. § 1651(a). For the reasons set forth herein, the court recommends that the defendants' motions be granted.

## I. BACKGROUND

This action arises out of a series of events in connection with a foreclosure proceeding instituted by defendant TierOne in July 2005 in New York Supreme Court, Suffolk County, seeking to foreclose the mortgage held on *pro se* plaintiff Rosaria Niles' ("Rosaria") residence located at 223 Lakeview Avenue West in Brightwaters, New York (the "premises"). The following facts are taken from the Amended Complaint and are presumed true for purposes of this motion. In addition, the undersigned takes judicial notice of court documents relating to plaintiffs Rosaria's and Salvatore A. Bono's ("Bono") (collectively "plaintiffs") prior state and federal court actions in order to describe the procedural posture and factual history of this case.

**(A)      Prior State and Federal Court Actions**

**(1)      New Jersey State Litigation – Estate of Laura J. Niles**

Laura J. Niles ("Laura Niles") and her brother Henry E. Niles ("Henry Niles") inherited a large fortune from their father's estate and lived together in their jointly owned family home in Brightwaters, New York until 1986. *Matter of Niles*, 176 N.J. 282, 286-87 (2003). In the 1980s, defendant Geoffrey M. Parkinson ("Parkinson"), an investment counselor and friend of Laura and Henry Niles, became their financial advisor. *Id*. at 287. In 1986, Laura Niles moved, and because of his declining health, Henry Niles remained at the family home in Brightwaters. *Id.* At that

time, a friend of Laura Niles asked Rosaria[2] to periodically check in on Henry Niles. *Id.* Despite

an age difference of thirty years, Henry Niles and Rosaria developed a close relationship between

1986 and 1989. *Id.* In April 1991, with Laura Niles' approval, Parkinson and Henry Niles'

attorney defendant Leland C. Selby instituted a conservatorship proceeding in New York on

Henry Niles' behalf to handle his affairs. *Id.* On October 7, 1992, Joseph J. Kunzeman, a former

judge, was appointed conservator of Henry Niles' property,[3] and Parkinson remained his financial

advisor. *Id.* Henry Niles married Rosaria on November 4, 1992. *Id.* Following her marriage,

Rosaria and her son, Bono, began to spend more time with Laura Niles. *Id.* at 288.

Laura Niles executed three *inter vivos* trusts, viz. (1) a revocable trust which designated

the defendant Laura J. Niles Foundation, Inc., as her residuary beneficiary, on March 31, 1992; (2)

a charitable remainder unitrust, wherein she placed a small portion of her assets and designated

that on her death the assets would be held for her brother Henry for his life and upon his death

would pass to the Laura J. Niles Foundation, Inc., on March 21, 1992; and (3) a second charitable

remainder unitrust on August 23, 1994. *Id.* Parkinson was named trustee for all three trusts. *Id.*

In 1994, Laura Niles suffered from numerous medical problems, including dementia, and required

in-home nursing care. *Id.* On May 21, 1997, Laura Niles amended her will and modified the trust

---

[2]Rosaria Niles is also known as Serena Bono, Serena Niles, and Sarina Niles in the New Jersey State and New York State court actions.

[3]The Honorable Daniel F. Luciano, Justice of the Supreme Court of the State of New York for the County of Suffolk appointed Kunzeman as conservator for Henry Niles, and Kunzeman served as conservator from October 1992 until December 27, 1997 (the "Conservatorship Proceeding"). (*Santoro Decl.*, dated December 17, 2010, Ex. F.) Following Henry Nile's death, Kunzeman accounted as conservator and on December 19, 2000 was discharged by the Honorable H. Patrick Leis, Justice of the Supreme Court of the State of New York for the County of Suffolk. (*Id.*)

agreements, nominating Bono as executor of her will and replacing Parkinson with Bono as

trustee of her trusts. *Id.* at 289. Plaintiffs and their family benefitted significantly from the

changes in Laura Niles' will and trusts, and Bono embarked on a sixteen-month spending spree of

Laura Niles' estate. *Id.* Henry Niles died on December 27, 1997, leaving no children.[4] *Id.* at 288.

On January 20, 1998, Parkinson commenced an action in New Jersey Superior Court

seeking, *inter alia*, an allowance of the settlement of his account as the former trustee of the trusts

and the appointment of a guardian *ad litem* for Laura Niles[5] based on a claim that plaintiffs had

unduly influenced her to change her will and trusts. *Id.* at 290. Following two bench trials, the

trial court (1) permanently removed plaintiff Bono as trustee "finding that his conduct was

'inexcusable and reprehensible' because he had embezzled and misused Laura's assets;" (2)

concluded "that there is no clearer case of undue influence than the one presently before this

court;" (3) reinstated the will and trusts of Laura Niles that existed prior to their May 21, 1997

modifications; (4) restored Parkinson as trustee; and (5) authorized Parkinson and the Laura J.

Niles Foundation, Inc. to file an application for surcharges, including counsel fees, against

plaintiffs. *Id.* at 290-91. In an unpublished opinion, the Appellate Division affirmed the trial

court's finding of plaintiffs' undue influence[6] and the imposition of fees, costs and surcharges

---

[4]The litigation concerning the probate of Henry Niles' will in the New York State
Surrogate's Court, Suffolk County following his death is discussed *infra.*

[5]Louis D. Laurino was appointed Guardian *ad litem* for Laura Niles, who subsequently
died on February 8, 2000. (*Santoro Decl.*, dated December 17, 2010, Ex. F.)

[6]The panel found that:

> [Rosaria] was the driving force behind the changes Laura made to
> her estate plan documents so as to benefit herself, Salvatore and
> their family members. Moreover, it is Serena who initiated the

against them.  *Id.* at 292.  The Supreme Court of New Jersey denied petitions for certification filed by plaintiffs, granted the cross petitions filed by the Laura J. Niles Foundation, Inc. and Parkinson, and held, *inter alia*, that plaintiffs were jointly and severally liable for attorney fees incurred by the estate.  *Id.* at 301-02.  In accordance with the Third Amended Judgment of the Superior Court of New Jersey, dated April 2, 2004, plaintiffs were jointly and severally liable to the Laura J. Niles Foundation, Inc. in the amount of $3,910,850.03 plus interest.  (*Santoro Decl.*, dated December 17, 2010, Ex. E.)

### (2)    New York State Surrogate's Court Litigation – Estate of Henry E. Niles

Following the death of Henry Niles on December 27, 1997, Parkinson and Selby petitioned the New York State Surrogate's Court, Suffolk County for the probate of the Last Will and Testament of Henry E. Niles, dated December 16, 1988, and a codicil thereto dated January 11, 1990.  (*Santoro Decl.*, dated December 17, 2010, Ex. G.)  Rosaria filed objections to the probate of the will and codicil and to the appointment of Parkinson and Selby as Executors, commenced a proceeding by Petition verified December 20, 1999 against the Estate of Henry E. Niles to compel payment of a claim, and commenced a proceeding by Petition verified September 17, 1998 to revoke preliminary letters testamentary issued to Parkinson and Selby.  (*Id.* at ¶¶ 1-3.) On March 15, 2000, Parkinson and Selby, as fiduciaries of the Estate of Henry E. Niles, the Henry Niles Foundation, Inc., the Laura J. Niles Foundation, Inc., the Attorney General of the State of

---

undermining of Parkinson by her constant baseless comments, criticisms, and accusations of his financial treachery and dishonesty.

*Id.* at 300-01.

New York, the Estate of Laura J. Niles and Rosaria[7] entered into a settlement agreement and resolved all issues relating to the Estate of Henry E. Niles (the "Settlement Agreement"). (*Id*. at 1-16.) Upon execution of the Settlement Agreement, the Estate of Henry E. Niles paid Rosaria $1,250,000. (*Santoro Decl.*, dated December 17, 2010, Ex. J.)

Pursuant to the Settlement Agreement, Rosaria executed releases on March 15, 2000 (1) in favor of Parkinson and Selby, releasing them individually and as fiduciaries of the Estate of Henry E. Niles for all claims, including but not limited to all matters in connection with, or arising from, the Estate of Henry E. Niles; and (2) in favor of the Laura J. Niles Foundation, Inc., the Henry E. Niles Foundation, Inc., and the Estate of Laura J. Niles, releasing such entities and their agents for any and all claims whatsoever, including, but not limited to, all matters in connection with, or arising from, the Estate of Henry E. Niles. (*Santoro Decl.*, dated December 17, 2010, Ex. H.) Bono sent a letter dated March 15, 2000 to the Hon. A. Gail Prudenti, Suffolk County Surrogate, stating "you committed nothing less than extortion" and "should be ashamed of yourself for what you did to my mother and for ignoring the law to help Kunzeman, Luciano and the Parkinson and Selby racketeering scheme." (*Santoro Decl.*, dated December 17, 2010, Ex. I.)

On April 3, 2000, Laura J. Niles Foundation, Inc. entered a New Jersey Judgment in the records of Suffolk County, New York in the amount of $526,296. (*Santoro Decl.*, dated December 17, 2010, Ex. J.) On August 4, 2000, the Estate of Henry E. Niles paid the balance of the funds of $2,750,000 owed under the Settlement Agreement to Rosaria by issuing a check in the amount of $2,239,773.22 and by honoring the Notice to Garnishee by paying the Sheriff the sum of $566,203.10 in satisfaction of Rosaria's liability to the Laura J. Niles Foundation, Inc. pursuant to the New Jersey Judgment. (*Santoro Decl.*, dated December 17, 2010, Exs. E, G, J.)

---

[7]Donald Novick, Esq. appeared on behalf of Rosaria. (*Id.* at 2.)

**(3)    Plaintiff Bono's Litigation in the United States District Court in the Eastern District of New York, 99 CV 3699 (TCP)(ETB)**

On September 29, 1999, Bono commenced an action in the United States District Court for the Eastern District of New York against John Barnosky[8], Kunzeman, John Matula[9], Parkinson, Selby, Michael S. Selvaggi[10], Harry K. Seybolt,[11] Albert J. Ruh[12], Sheldon N. Weisberg, Dante Investigations, Inc. and Greenwich Advisory Associates, alleging that the defendants therein were involved in a conspiracy and continuing enterprise to manipulate and subvert the judicial systems of the states of New York and New Jersey in an effort to reap financial gains at the expense of Bono and elderly citizens of New York and New Jersey in violation of 42 U.S.C. § 1983 and 18 U.S.C. § 1962(a).  (*Santoro Decl.*, dated December 17, 2010, Ex. K.)   Bono amended his complaint and alleged *inter alia* that Selby and Parkinson acted in concert with Kunzeman and the defendants therein to illegally manipulate the judicial system to avoid losing control over Henry and Laura Niles assets by (i) creating and taking control of trusts; (ii) filing a false conservatorship petition; and (iii) by enlisting Justice Luciano to name Kunzeman as conservator in return for aiding Luciano in securing a position on the Appellate

---

[8]Barnosky is a member of Farrell Fritz, P.C. and was counsel for Parkinson and Selby (*Id*. at 3, 9.)

[9]Matula and Weisberg are private investigators, Dante Investigations, Inc. is a private investigative firm, and Greenwich Advisory Associates is an investment advisory business that transacts business in New York.  (*Id.* at 3.)

[10]Selvaggi acted as a court-appointed guardian *ad litem* in the underlying New Jersy probate action.  (*Id.* at 2.)

[11]Seybolt is a Superior Court Judge in Warren County who presided over the New Jersey probate action. (*Id*. at 2.)

[12]Ruh is a Surrogate in the Superior Court in Warren County who allegedly carried out administrative tasks in connection with the trusteeship proceeding.  (*Id.* at 3.)

Division.  (*Id.* at 4-8.)  The defendants therein moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  By Memorandum and Order dated September 20, 2000, District Judge Thomas C. Platt granted defendants' motions and dismissed the case.  (*Id.* at 1-42.)

**(4)    Foreclosure Proceeding,  Bankruptcy Proceeding and Related Actions**

On July 11, 2005, defendant TierOne commenced an action in New York State Supreme Court, Suffolk Country against Rosaria to foreclose the mortgage held on Rosaria's residence located at 223 Lakeview Avenue West in Brightwaters, New York (the "Foreclosure Proceeding").  (*Santoro Decl.*, dated December 17, 2010, Ex. M.)  In response, Rosaria interposed a "Verified Answer, Objections, and Counterclaim" dated August 15, 2005 which stated that Bono prepared the document on her behalf.  (*Santoro Decl.*, dated December 17, 2010, Ex. N.)

On February 1, 2006, Rosaria filed a notice of removal of the Foreclosure Proceeding to this Court and asserted cross-claims against Parkinson, Lamb, Selby, the Laura J. Niles Foundation, Inc. and the United States of America alleging, *inter alia*, that the evidence would "conclusively prove how CIA Case Officer Mitchell Klein, CIA Officer Lydia Spellman, CIA advisor John T. Martinez (their respective superior commanding officers) and persons under their supervision and control, betrayed the legality and constitutionality of the CIA's activities, and redefined their rank and role within our government as a 'permission slip' to wage to full-fledged persecution against a family of United States persons on United States soil, [] Niles and members of her family."  (Docket No. CV-06-0447, Docket Entry 1 at 3.)  By Memorandum and Order dated February 15, 2006, District Judge Joanna Seybert remanded the action to New York Supreme Court, Suffolk County.[13]  (*Santoro Decl.*, dated December 17, 2010, Exs. O, P.)

_____

[13]In the decision, the district court questioned whether Bono was engaged in the authorized practice of law by purporting to appear and represent Rosaria in this action even

By Order dated June 30, 2006, the Supreme Court, Suffolk County (i) granted summary judgment in favor of defendant TierOne; (ii) entered a Judgement of Foreclosure and Sale dated November 2, 2007; and (iii) appointed a Referee to sell the mortgaged premises at public auction and compute the amounts due TierOne.  (*Santoro Decl.*, dated December 17, 2010, Ex. Q.) Rosaria made numerous attempts to stay enforcement of the Judgment of Foreclosure and Sale which the Appellate Division, Second Department twice denied by Orders dated January 25, 2008 and January 30, 2008.  (*Santoro Decl.*, dated December 17, 2010, Exs. S, T, V, W, X, Y, Z, AA, BB, CC, EE, FF, GG, HH; *Finkelstein Aff.,* dated March17, 2011, Ex. A.)  Thereafter, Rosaria attempted to stay the foreclosure of sale by filing petitions in Bankruptcy Court, and the automatic stay was eventually lifted upon a motion of defendant Wilshire but continued to be the subject of two additional unsuccessful applications by Niles to reinstate the stay.  (*Santoro Decl.*, dated December 17, 2010, Exs. DD, FF, GG; *Finkelstein Aff.,* dated March17, 2011, Ex. A.)

After the Bankruptcy Court lifted the stay, Rosaria filed another motion in the Appellate Division, Second Department, seeking, *inter alia*, another stay of the foreclosure sale pending appeal.  By Decision and Order dated January 13, 2009, the Appellate Division denied the motion and *sua sponte* dismissed the appeal on the ground that the right of direct appeal from the October 23, 2006 Order terminated with the entry of Judgment on November 17, 2007 and no appeal from the Judgment had been taken.  (*Santoro Decl.*, dated December 17, 2010, Ex. Z.)

Rosaria subsequently filed another application "by her son and attorney-in-fact Salvatore A. Bono" in Supreme Court, Suffolk County action seeking, *inter alia,* an order staying the foreclosure sale and vacating the Judgment of Foreclosure.  Rosaria alleged, *inter alia*, that:

---

though Bono was not licensed to practice law in the State of New York.  (*Id.*)

she was fraudulently induced to enter the subject mortgage transaction by the officers of co-defendant Laura J. Niles Foundation, Inc., including co-defendant Geoffrey M. Parkinson, in violation of state and federal law. Defendant also implicates members of the Central Intelligence Agency (CIA) in the 'mortgage scheme interposed through' [TierOne Bank], when they 'installed a fraudulent mortgage device to secure my mother's home by fraud' . . . . [Rosaria] further alleges that she was not properly served with the summons and complaint . . . . and that she did not receive notice of [TierOne Bank's] application for a Judgment of Foreclosure and Sale prior to it being granted on November 2, 2007.

(*Id.*) By Order dated April 16, 2009, the Supreme Court denied the application and held that any allegations of fraud in the action were raised or could have been raised in the answer, in opposition to the summary judgment motion or in Rosaria's motions to reargue and renew. (*Id.*)

The premises were sold at a foreclosure sale to defendants Wilshire and American Key on April 8, 2009. (*Finkelstein Aff.,* dated March17, 2011, Ex. A.) A trial was thereafter held in Suffolk County District Court, and on July 30, 2009, defendants Wilshire and American Key were awarded a judgment of possession of the premises and a warrant of eviction against plaintiffs.[14]

On August 21, 2009, plaintiffs commenced the instant action in the United States District Court for the Eastern District of New York alleging that the foreclosure of the subject premises stemmed from fraud in connection with the note and mortgage and a network of a conspiracy involving all the named defendants (and others) which found the relevant note and mortgage to be valid. Plaintiffs principally seek (i) a stay of their eviction from the premises; (ii) to vacate the judgment of foreclosure and sale; and (iii) to void a referee's deed of foreclosure dated May 26, 2009, naming defendants Wilshire and American Key as grantees based upon alleged fraud and

---

[14]On September 23, 2009, plaintiffs were evicted from the premises and shortly thereafter, defendants Wilshire and American Key entered into a contract of sale with a third party. (Memorandum of Law in Support of defendants Wilshire and American Key's Motion to Dismiss, ¶ 20.) Since then the premises has been sold and is now owned by a third party. (*Id.*)

conspiracy.[15]

On September 2, 2009, plaintiffs initiated another action in Supreme Court, Suffolk County seeking principally the same relief as in the instant action. By Decision and Order dated April 6, 2010, the Supreme Court dismissed the action on the grounds that their causes of action were barred by the doctrines of *res judicata* and collateral estoppel and enjoined plaintiffs from filing any further actions in that court without prior leave of the court.[16] (*Finkelstein Aff.*, dated March 17, 2011, Ex. A.)

---

[15]Plaintiffs' instant action is discussed *infra.*

[16]In its decision, the Supreme Court observed that the Suffolk County action sought the same relief as in the instant action. (*Id.*) The court agreed with the defendants therein that

> plaintiffs' complaint must be dismissed in its entirety, as plaintiffs have yet again raised the same arguments of fraud and conspiracy that were raised and decided in multiple actions, and upon multiple applications by Niles in the underlying foreclosure action, in the Appellate Division, Second Department, and in at least two different federal courts.

(*Id.*) The Court held that

> both actions concern the foreclosure of the same mortgage transaction secured by the same real property and the issues attendant thereto, and that determinations on the merits were made by numerous courts that TierOne bank was entitled to foreclose the mortgage executed by Niles, that the Judgment of Foreclosure should not be vacated, that no stay of the sale was warranted, and that no stay of the warrant of eviction or judgment of possession was appropriate. As such, the Court finds that the instant action is barred by the doctrines of *res judicata* and collateral estoppel.

(*Id.*)

**(B)      The Instant Action**

On August 21, 2009, plaintiffs filed the complaint in this action against defendants.[17]  On

that same date, plaintiffs moved by Order to Show Cause for a temporary restraining order and

preliminary injunction against defendants to stay their eviction from the Brightwater premises; to

vacate the eviction order; to void a referee's deed of foreclosure; to vacate the summary judgment

order dated April 19, 2006 and final judgment of foreclosure and sale dated November 2, 2007 in

the Suffolk County action; to void and discharge from the record the purported mortgage dated

December 30, 1999; and to empanel a special federal grand jury to investigate plaintiffs' charges

of corruption surrounding the foreclosure action.  (Docket Report, Entry No. 4.)  Following a

hearing, by Order dated August 24, 2009, the district court denied the plaintiffs' motion.  (Docket

Report, Entry No. 8.)  On November 1, 2010, plaintiffs filed an amended complaint.  (Docket

Report, Entry No. 88.)

Plaintiffs brought the amended complaint pursuant to:

(I.) The Fifth and Fourteenth Amendment of the U.S. Constitution; (II.) The Civil
Rights Act of 1871, 42 U.S.C. § 1983; (III.) Conspiracy against Rights; Title 18,
Part 1, Chapter 13 § 241; (IV.) Truth in Lending Act, 15 U.S.C. § 1601 Subpart E,
Section 226.34(a)(3) and (a)(4); (V.) Mail Fraud, 18 U.S.C. § 1341; (VI.) Wire
Fraud 18 § 1343; (VII.) Ethics in Government Act, 28 U.S.C. § 591 et seq.; (VIII.)
Attempt and Conspiracy to commit Extortion - Title 18 U.S.C. § 1349; (IX.)
Larceny and Embezzlement, Title 15 U.S.C. § 80a-36; (X.) Larceny and wrongful
appropriation, Title 10, U.S.C. § 921. Art. 121; (XI.) Forgery, Title 10 U.S.C. §
Art. 123; (XII.) Obstruction of criminal investigations, Title 18 U.S.C. § 1510;
(XIII.) Obstruction of State or local law enforcement, Title 18 U.S.C. § 1511;
(XIV.) Engaging in monetary transactions in property derived from specified
unlawful activity, Title 18 U.S.C. § 1957; (XV.) Federal Tort Act 28 § U.S.C. §§
2671-2680 and "Bivens Action;" (XVI.) Conspiracy to Defraud - Title 18 U.S.C.
1346; (XVII.) Torture 18 U.S.C. § 2340A; (XVIII.) Retaliating against a witness,

---

[17]All of the defendants are related to events underlying the state and federal court
proceedings.

victim, or an informant - Title 18 U.S.C. § 1513; (XIX.) Violent crimes in aid of racketeering activity - Title 18 U.S.C. § 1959; (XX.) Peonage - Title 18 U.S.C. 1581 committed in furtherance of (a.) Racketeering activity Title 18 U.S.C. § 1959, (b.) Kidnapping - Title 18 U.S.C. § 1201, (c.) Unlawful imprisonment, kidnapping, and custodial interference in violation of N.Y.S. Penal Law § 135.00, (d.) Custodial Interference in the first degree, N.Y.S. Penal Law § 135.50 (2), (e) N.Y.S. Penal Law § 260.10, "Endangering the Welfare of a child," and; (XXI.) Wilful violation of duty under Title 28, Section 507 U.S.C.; (XXII.) Conspiracy to commit Murder and Murder, Title 10 U.S.C. 918, Art. 118.

(Amended Compl., ¶3.)  Plaintiffs allege principally that the defendants have operated, together with other non-parties, as CIA operatives as part of a scheme and conspiracy,[18] and "quest to . . . wrest control of the large estates of citizens living along the eastern seaboard" and are victims of this longstanding government operation.  (*Id.* at ¶¶ 16, 133.)  Specifically, plaintiffs maintain that defendants executed their scheme by manipulating and subverting the New York State judicial system in the Conservatorship Proceeding, the Surrogate's Court Litigation and Foreclosure Proceeding, and the New Jersey State judicial system in the New Jersey Litigation.  (*Id.* at ¶¶ 39, 65, 79, 80, 81, 92, 129, 130, 141.)  According to plaintiffs, the outcomes of the foregoing litigations were the result of a CIA driven conspiracy of the defendants and other non-parties, who throughout the amended complaint are referred to as "Defendants" but are not joined in this action.  (*Id.* at ¶ 27.)

Although the 177-page amended complaint does not designate any causes of action, it contains what plaintiffs describe as six "Special Counts" under a heading "Section V -- The Plaintiffs' Claims against the Defendants."  (*Id.* at ¶¶ 128-340.)  Special Count I alleges that

---

[18]Plaintiffs allege that the named defendants (and others) targeted plaintiffs in a conspiracy wherein defendants fabricated mortgage and financial documents for plaintiffs' residence, "rigged" cases through the state court systems by inserting their own judges, enlisting Bono's former wife as a confidential CIA informant, and swindling charities out of millions of dollars.  (Amended Compl., ¶¶ 4, 5, 52, 65, 69, 97.)

defendants (and others) were operating under the auspices of the CIA and repeatedly manipulated and subverted the state judicial system in order to impose countless acts of fraud, felony offenses, and constitutional violations against Rosaria[19] and seeks recovery of one-third the value of Henry Niles' estate and payment of the remainder of his estate to various charities on behalf of Rosaria. (*Id*. at ¶¶ 128-59.) Special Count II alleges that defendants (and others) were operating under the auspices of the CIA and manipulated and subverted the state judicial system under color of official right to violate the entire Bono-Niles family[20] and seeks actual, nominal and punitive damages and legal fees against the Foundation Defendants as well as the dissolution of the defendant Laura J. Niles Foundation, Inc. and other relief. (*Id*. at ¶¶ 160-189.)

Special Count III alleges that defendants (and others) systematically subverted the Suffolk County Surrogate's Court under color of official right in order to deny Rosaria and Henry and Laura Niles their property rights[21] and seeks recovery of one-third the value of Henry Nile's estate

---

[19]Plaintiffs allege that defendants and others were part of scheme to wrongfully seize Henry Nile's assets which was jeopardized when Henry married Rosaria. (*Id*. at ¶¶ 133-40.) As a result, plaintiffs aver that (i) defendants Selby and Parkinson commenced a false proceeding to appoint a conservator for Henry Niles in New York State Supreme Court; (ii) Justice Luciano, who presided over the proceeding appointed co-conspirator Kunzeman as conservator; and (iii) all of these participants acted in concert with the CIA to perpetrate the scheme. (*Id*.)

[20]Plaintiffs allege that the Foundation Defendants and others were part of a scheme and conspiracy to wrongfully seize control over Laura Nile's assets and aver that defendants enlisted a law firm and Judge Harry K. Seybolt of the Superior Court of the State of New Jersey as part of the CIA scheme to control Laura Nile's assets and violate plaintiffs. (*Id*. at ¶¶ 160-71.)

[21]Plaintiffs allege that the Foundation Defendants and Federal Defendants and others, including the Honorable A. Gail Prudenti, then presiding as Surrogate for the County of Suffolk, were part of a CIA scheme to conceal the will of Henry Niles and violate the rights of Rosaria in the context of the Surrogate's Court proceedings in the estate of Henry Niles. (*Id*. at ¶¶ 190-204.) Plaintiffs aver that "Surrogate Prudenti abused her judicial powers by agreeing to ignore all felony offenses, civil rights, and constitutional violations perpetrated in connection with the Conservatorship Case, and the Probate Case of Henry E. Niles she presided over and ignored all

and payment of the remainder of his estate to various charities on behalf of Rosaria. (*Id.* at ¶¶

190-224.) Special Count IV is divided into eight subparts which plaintiffs designate as "Event A"

through "Event H" and contains the following allegations:

(A) Event A alleges that in 1997 and 1998, the defendants and others, operating through the CIA's scheme, enlisted a former employee of Bono to undermine Bono's insurance brokerage business and undermine Bono financially and caused his business to cease in 2004. (*Id.* at ¶¶ 225-29, 256-59.)

(B) Event B alleges that from February 1998 through October 1998, the defendants and others, operating through the CIA's scheme, enlisted a convicted felon and government cooperative (Sheldon Weisberg a/k/a Steve Webber) to "tail" Bono and make attempts on his life. (*Id.* at ¶¶ 230-31, 260-61.)

(C) Event C alleges that the defendants and others, operating through the CIA's scheme, unlawfully installed electronic listening devices in the Niles-Bono's family Brightwaters home and Bono's office in Brooklyn, New York, which were discovered in 1998, and in 2001 the CIA broke into Bono's office to remove a noisy/defective listening device and ransacked his office to make it look like a burglary. (*Id.* at ¶¶ 232-33, 261-62.)

(D) Event D alleges that the defendants and others, operating through the CIA's scheme enlisted a convicted felon (Leo J. Mangan) and CIA confidential sources, including an off-duty police officer (James Rockefeller) to falsely arrest, imprison, isolate and torture Bono. (*Id.* at ¶¶ 234-35. 263-67.)

(E) Event E alleges that the defendants and others, operating through the CIA's scheme conspired to murder Laura Niles on February 8, 2000 and thereafter probate a fraudulent Last Will and Testament of Laura Niles in New Jersey Superior Court to swindle her $30 million estate. (*Id.* at ¶¶ 236, 268-69.)

(F) Event F alleges that defendants and others, operating through the CIA's scheme arranged an assault on Bono at his Brooklyn office in February 2000, and enlisted

---

the evidence that voided the purported Postnuptial Agreement and the fraudulent Last Will devised by CIA's personnel Parkinson and Selby. Plaintiffs assert Surrogate Prudenti used her judicial powers to assist the Defendants to impose a completely one sided 'settlement agreement' in bad faith. Plaintiffs maintain that the agreement was breached within weeks, and Defendant CIA (through CIA subcontractor and confidential source Kunzeman), then rewarded the Surrogate Prudenti by helping her secure an appointment as Presiding Judge of the Appellate Court, Second Department." (*Id.* at ¶¶ 190, 224.)

one of Bono's secretaries and a convicted felon and CIA confidential source to tamper with Bono's computerized accounting records and report his daily activities, defraud plaintiffs out of $120,000 and deprive Bono's children of Bono's assets. (*Id*. at ¶¶ 237-38, 270.)

(G)     Event G alleges that defendants and others, operating through the CIA's scheme, used CIA confidential sources, including his former wife and mother of his children (Linda Santiago a/k/a Linda Bono), to entrap Bono as co-administrator of his late father's estate, the Estate of Antonio Bono, and to financially damage Bono's children. (*Id*. at ¶¶ 239-48, 271-72.)

(H)     Event H alleges that defendants and others, operating through the CIA's scheme, enlisted Bono's former wife to "drive Bono crazy" and "instigate a reaction that would land him in jail" and fabricate false reports to defraud Bono, engage him in litigation, and use his children "as pawns" in the Supreme Court and Family Court litigations in Suffolk Count from 1999 to 2003.  (*Id*. at ¶¶ 249-52.)

(*Id*. at ¶¶ 225-86.)  Plaintiffs seek actual, nominal, punitive damages and legal fees and Bono seeks recovery on behalf of his children for unspecified damages over the years.  (*Id*. at ¶¶ 285-86.)

Special Count V alleges that defendants (and others) were operating under the auspices of the CIA and manipulated and subverted the state judicial system under color of official right to secure the Bono-Niles home through mortgage fraud and a foreclosure proceeding in Suffolk County Supreme Court and seeks equitable relief restoring title on the premises that was the subject of the foreclosure proceeding to Rosaria, as well as seeks damages in the amount of the replacement value of the subject premises and improvements thereon as well as legal fees and other related relief.  (*Id*. at ¶¶ 287-32.)  Special Count VI alleges that it is a "wraparound count" incorporating the allegations in the first five Special Counts and asserts that the defendants corrupted every level of government under color of official right and cancelled numerous criminal investigations at the county, state and federal level and seeks, *inter alia*, for the court to compel

the Foundation Defendants and every subordinate co-defendant to testify before the court and make full disclosure of their roles as persons of operational interest to defendant CIA and to compel the defendant United States to declassify and release all records relating to their interest and support of their co-defendants. (*Id*. at ¶¶ 333-40.)

Defendants now move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 2(b)(5) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In addition, the defendants seek a litigation injunction pursuant to 28 U.S.C. § 1651(a). Defendants' motions will be addressed together.

## II. STANDARD OF REVIEW

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first." *Bobrowsky v. The Yonkers Courthouse*, No. 10-CV-1846 (KMK), 2011 WL 1344590, at *7 (S.D.N.Y. Apr. 8, 2011); *see Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined") (internal quotation marks and citations omitted); *cf. Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding the court may decide a motion to dismiss for failure to state a claim only after finding subject matter jurisdiction exists). The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they

suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Bobrowsky*, 2011 WL 1344590, at *7 (internal quotation marks and citations omitted).

**(A)     Rule 12(b)(1)**

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see Baur v. Commissioner of Social Sec.*, No. 10-CV-3781 (CBA), 2011 WL 1877726, at *2 (E.D.N.Y. May 16, 2011). Under both Rule 12(b)(1) and Rule 12(b)(6) "the court must accept as true all material factual allegations in the complaint and draw all inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997); *see Baur*, 2011 WL 1877726, at *2. "When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Baur*, 2011 WL 1877726, at *2 (internal quotation marks and citation omitted). Moreover, "[i]n contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 361 (E.D.N.Y. 2010). Finally, notwithstanding the *pro se* status of plaintiffs, "subject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton,* 535 U.S. 625, 630 (2002); *see Feinstein v. Chase Manhattan Bank*, No. 06 CV 1512 JFB ARL, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5,

2006).

**(B)    Rule 12(b)(6)**

The Supreme Court has instructed that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  If the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings")).

## III.  DISCUSSION

Defendants move to dismiss the plaintiffs' amended complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) as barred by the *Rooker-Feldman* doctrine and, alternatively, as barred by the doctrines of *res judicata* and collateral estoppel.  Defendants also

19

move to dismiss the plaintiffs' amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[22]  Defendants seek a litigation injunction pursuant to 28 U.S.C. § 1651(a).

**(A)**     ***Rooker-Feldman* Doctrine**

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elecs.*, 422 F. 3d 77, 84 (2d Cir. 2005); *see generally District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *see also Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296 (1983) ("lower courts possess no power whatever to sit in direct review of state court decisions").  "The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments[23] . . . unless otherwise provided by Congress." *Kropelincki v. Siegel*, 290 F.3d 1118, 128 (2d Cir. 2002) (internal quotation marks and citation omitted).  The doctrine operates to bar subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

The Second Circuit has established four requirements that must be satisfied for the *Rooker-Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;"

---

[22]Although defendants move to dismiss for failure to state a claim for each cause of action alleged in the amended complaint, because the undersigned concludes that the court lacks subject matter jurisdiction over plaintiffs' federal claims, *see infra.,* the court need not reach these arguments.

[23]A notable exception to this jurisdictional rule is habeas corpus review.  *See* 28 U.S.C. § 2254(a); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 n.8 (2005).

(2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F. 3d at 85 (internal quotation marks and citations omitted). As the Second Circuit noted, the "first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.* If the plaintiffs' claims meet all four requirements, the court will lack subject matter jurisdiction to hear the claims under *Rooker-Feldman*. In the instant matter, plaintiffs complain of the state-court judgments in the New York State Foreclosure Proceeding, the New York State Surrogate's Court Litigation, the New Jersey State Litigation, and the New York State Conservatorship Proceeding. Applying these principles, the court will address each state-court judgment in turn.

**(1) The New York State Foreclosure Proceeding**

With respect to the Foreclosure Proceeding, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine."[24] *Ashby v. Polinsky,* No. 06-CV-6778 (DLI), 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), *aff'd* 328 Fed. App'x 20 (2d Cir. 2009); *see Done*

---

[24]This even includes challenges to a judgment of foreclosure that were allegedly procured by fraud, as plaintiffs have alleged herein. *See, e.g.,Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 164-65 (E.D.N.Y. 2010) (finding *Rooker-Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); *Parra v. Greenpoint Mortgage Co.*, No. Civ.A. 01-CV-02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claim from the ambit of *Rooker-Feldman*"); *Dockery v. Cullen & Dyckman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

*v. Wells Fargo Bank, N.A.*, No. 08-CV-3040 (JFB)(ETB), 2009 WL 2959619, at *3 (Sept. 14, 2009); *see also Ward v. Bankers Trust Co. of California, N.A.*, No. 09-CV-1943 (RRM)(LB), 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). Here, the procedural requirements of the *Rooker-Feldman* doctrine are satisfied: (i) plaintiff Rosaria lost in the state court as evidenced by the state court Judgment of Foreclosure and Sale dated November 2, 2007; and (ii) the state court judgment was rendered in 2007, well before the within action was commenced on August 21, 2009.

In addition, to the extent plaintiffs seek to challenge the state court judgment of foreclosure, the substantive requirements of the *Rooker-Feldman* doctrine are met as well. The injuries of which plaintiffs complain were caused by the state-court judgment, namely the divestiture of title to Rosaria's home and the attendant dispossession of the premises. Read as a whole, the amended complaint alleges that defendants have engaged in a scheme and conspiracy of submitting fraudulent documents in connection with the November 2, 2007 Judgment of Foreclosure and Sale in other courts, including the Bankruptcy Court, and have manipulated and subverted the state judicial system to unlawfully divest title to plaintiffs' home. (Amended Compl. ¶¶ 287-332.) Thus, the genesis of plaintiffs' alleged injuries (the sale and dispossession of the Brightwaters premises) directly followed the state-court judgment of foreclosure. Moreover, as evidenced by the allegations in the amended complaint and motion for a preliminary injunction and restraining order, plaintiffs are seeking to have this court review and undo the 2007 state-court judgment of foreclosure on the grounds that the judgment was fraudulently procured. A ruling here in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, . . . . which is precisely the result that the

22

*Rooker-Feldman* doctrine seeks to avoid." *Kropelnicki*, 290 F.3d at 129.

In sum, plaintiffs' allegations make clear that they are attempting to litigate the validity of the foreclosure action in this court. Plaintiffs' opposition to defendants' motions does not address defendants' arguments but appears to reiterate in an incoherent manner conclusory allegations and statements all associated with events leading up to and including the foreclosure. Plaintiffs' complaint of injuries to themselves, their families and others caused by the state-court foreclosure judgment substantively seeks this court's review and rejection of that judgment. This court concludes, however, the *Rooker-Feldman* doctrine bars any such review of plaintiffs' claims with respect to the Foreclosure Proceeding that can be said to arise out of the allegations in the amended complaint, including those allegations contained in Special Count V (and corresponding allegations in Special Count VI).

### (2)     The New York State Surrogate's Court Litigation

The *Rooker-Feldman* doctrine applies to plaintiffs' claims in connection with the New York State Surrogate's Court litigation. With respect to this litigation, plaintiffs seek to void the stipulation of settlement executed in the probate proceeding[25] in the New York State Surrogate's Court for the probate of the Last Will and Testament of Henry E. Niles, dated December 16, 1988, and a codicil thereto dated January 11, 1990 and allege that (i) the defendants (and other non-parties, such as the law firm of Farrell Fritz, P.C. and the Honorable A. Gail Prudenti) operated under the auspices of the CIA to manipulate and subvert the state judicial system under color of official right; (ii) Judge Prudenti assisted defendants in imposing a one-sided settlement agreement by ignoring violations perpetrated on plaintiffs in connection with the conservatorship

---

[25]Notably, Rosaria was represented by counsel.

action and relying on fraudulent documents, such as the last will of Henry Niles devised by CIA's personnel defendants Parkinson and Selby; (iv) and Judge Prudenti was thereafter rewarded by Kunzeman with help in procuring an appointment to the Appellate Division. (Amended Compl. ¶¶ 190-224.) The court concludes that it lacks subject matter jurisdiction to void the stipulation of settlement entered by the New York state courts because the four *Rooker-Feldman* factors are satisfied.

In turning to the procedural prongs, the court acknowledges that as a threshold matter, "a settlement agreement may constitute a state court judgment for purposes of *Rooker-Feldman*." *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 274 (E.D.N.Y. 2009). In order to satisfy the first requirement of the doctrine, "rather than putting the court in the position of evaluating subjectively whether a settlement should be considered a loss, it seems sufficient for plaintiffs to allege that the court-approved settlement[] somehow violated their rights." *Green v. City of New York*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006). Because plaintiffs assert that the settlement agreement violated Rosaria's rights, *inter alia*, to her husband's estate and other properties, the court deems plaintiff Rosaria a losing party in a state court action for purposes of the first *Rooker-Feldman* requirement. The fourth requirement is also satisfied as there is no question that the settlement agreement was entered on March 15, 2000, prior to plaintiffs commencing this action on August 21, 2009. The substantive requirements are also met here, as plaintiff Rosaria complains of financial injuries and violations of her property rights caused by the stipulation of settlement and clearly invites this court to review and reject the stipulation of settlement executed in the state surrogate court, by asking the court to vacate the settlement agreement and award her as a measure of damages, recovery for herself in the amount of one-third of Henry Niles' estate

24

and recovery on behalf of certain charities of the remaining two-thirds of his estate. (Amended Compl. ¶¶ 159, 224.) Having met all the requirements, the court concludes that the *Rooker-Feldman* doctrine bars any such review of plaintiffs' claims with respect to the New York State Surrogate's Court Litigation that can be said to arise out of the allegations in the amended complaint, including those allegations contained in Special Count III (and corresponding allegations in Special Count VI).

### (3)    The New York Jersey State Court Litigation

The *Rooker-Feldman* doctrine applies to plaintiffs allegations in the amended complaint with respect to the New Jersey State Court litigation. Plaintiffs aver in their amended complaint that the New Jersey Superior Court's finding of undue influence, nullification of the amendments to Laura Niles' estate plan, removal of plaintiff Bono as trustee and the imposition of a money judgment against plaintiffs resulted from the surreptitious conduct of defendants, who, acting under the auspices of the CIA, manipulated and subverted the state judicial system under color of official right in furtherance of a CIA scheme. (Amended Compl., ¶¶ 160-89.) Plaintiff Rosaria seeks the financial equivalent of a bequest of real property under Laura Niles' will together with legal fees and fiduciary commissions. (Id. ¶¶ 188-89.) Inasmuch as plaintiffs are clearly state court losers; who commenced this instant action more than five years after the Third Amended Judgment of the Superior Court of New Jersey, dated April 2, 2004; are complaining of an injury directly related to the state court judgment; and is seeking to have this court revisit the results of the New Jersey litigation, any claim that can be said to arise out of the allegations of the amended complaint concerning the New Jersey litigation, including those allegations contained in Special Count II (and corresponding allegations in Special Count VI), is squarely foreclosed by the

*Rooker-Feldman* doctrine.

### (4) The New York State Court Conservatorship Litigation

The *Rooker-Feldman* doctrine applies to plaintiffs' claims in connection with the New York State Conservatorship Proceeding. With respect to this litigation, plaintiffs allege that the defendants herein manipulated and subverted the New York State Judicial system in the Conservatorship Proceeding after filing a false petition therein and seek this court's review of the outcome of that proceeding, which resulted in the appointment of Kunzeman as conservator for Henry Niles from 1992 until his death in 1997, to award plaintiff Rosaria recovery of one-third the value of Henry Niles' estate and certain other unspecified measure of damages sustained by her as a result of its outcome. (Amended Compl., 128-59.) To the extent plaintiffs invite this court to review and reject the result in the Conservatorship Proceeding which was rendered well before this action commenced, the court declines such an invitation on the grounds that the *Rooker-Feldman* doctrine precludes jurisdiction over any such claims, including any that may arise out of the allegations in Special Count I (and corresponding allegations in Special Count VI).

In summary, although the amended complaint sets forth a stream of incoherent, disjointed conclusory allegations, read together with plaintiffs' opposition to defendants' motions, plaintiffs appear to (i) allege in essence that defendants have engaged in a fraudulent scheme and vast CIA conspiracy resulting in the foreclosure and sale of (and eviction from) the subject premises; (ii) detail the history of all of the court proceedings associated with the foreclosure and sale of (and eviction from) the premises, including the proceedings concerning the estates of Laura and Henry Niles; (iii) complain of injuries resulting from the foreclosure on Rosaria's property caused by the state court order (as well as injuries from state court proceedings leading up to the resultant

26

judgment of foreclosure and sale); and (iv) invite the court to review and reject the judgment of foreclosure, the stipulation of settlement, and conservatorship appointment in the New York State courts and the New Jersey State court judgment. Because the adjudication of plaintiffs' federal claims in the instant action are inextricably intertwined with the merits of the state court proceedings, this court lacks subject matter jurisdiction over the instant action. Accordingly, the undersigned reports and recommends that the district court grant defendants' motions to dismiss plaintiffs' federal claims.

**(B)     Preclusion Principles**

Alternatively, to the extent plaintiffs' amended complaint can be construed as raising claims specific to the federal defendants' conduct during the alleged conspiracy orchestrated by the CIA and/or defendants' conduct during the state and federal court proceedings, the undersigned still concludes that all of plaintiffs' federal claims are barred by ordinary preclusion principles. "The Full Faith and Credit Act, 28 U.S.C. § 1738, has long been understood to encompass the doctrines of claim and issue preclusion and to require that federal courts not grant a forum to litigants whose claims have previously been resolved in state court." *Trakansook v. Astoria Fed. Savings and Loan Ass'n,* No. 06-CV-1640 (SMG), 2007 WL 1160433, at *6 (E.D.N.Y. Apr. 18, 2007) (citation omitted).

**(1)     *Res Judicata* (or Claim Preclusion)**

"A federal court considering the preclusive effect of a state court judgment looks to the law of the state in which the judgment was rendered." *Id.*; *see Ferris v. Cuevas,* 118 F.3d 122, 125-26 (2d Cir. 1997) (holding "we give preclusive effect to a state court judgment whenever the courts of that state would do so"). In the case at hand, the effect of the prior state court judgments

at issue is governed by New York and New Jersey law.

"Under both New York law and federal law, the doctrine of *res judicata* or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (internal quotation marks and citations omitted); *see Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). New York courts adhere to a broad transactional analysis "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id.* (internal quotation marks and citation omitted); *see Done,* 2009 WL 2959619, at *3 (same). *Res judicata* applies in New York where "(1) there is a previous adjudication on the merits; (2) the previous action involved [the party against whom *res judicata* is invoked] or its privy; and (3) the claims involved were or could have been raised in the previous action." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt., P.C.,* 701 F. Supp. 2d 340, 351 (quoting *Whelton v. Educational Credit Mgmt. Corp.*. 432 F.3d 150, 155 (2d Cir. 2005)).

"Under New Jersey law, *res judicata* or claim preclusion is governed by the entire controversy doctrine, which requires a plaintiff in a civil action to seek complete relief for vindication of the wrong he charges in that single suit." *Union Muffler Corp. v. Midas Int'l Corp*, No. 91 Civ. 1522 (JFK), 1992 WL 6186, at *2 (S.D.N.Y. Jan. 3, 1992) (internal quotation marks and citation omitted). The entire controversy doctrine forecloses "subsequent litigation not only of claims actually litigated but of all claims arising out of the same controversy that could have

been raised in the earlier action." *Id.*; *see Schneider v. United States*, Civil No. 06-3200 (JBS), 2007 WL 4440976, at *4 (D. N.J. Dec. 17, 2007) (observing that New Jersey's "entire controversy doctrine is essentially *res judicata* by another name and that the purpose of both doctrines is to require litigants to bring all possible claims in one proceeding"). "Under New Jersey law, claim preclusion will prevent a litigant from relitigating disputes that had been resolved in an earlier proceeding if three requirements are met: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Id.* (internal quotation marks and citation omitted).

"All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*." *Done*, 2009 WL 2959619, at *3. "A judgment of foreclosure and sale obtained by default constitutes a decision on the merits." *Id.* at *4; *see Council v. Better Homes Depot, Inc.*, 04 CV 5620, 2006 WL 2376381, at *4 (E.D.N.Y. Aug. 16, 2006) (citing cases).

The within action meets the requisite criteria for claim preclusion under New York law. First, a final judgment on the merits was entered in the Supreme Court, Suffolk County litigation, to wit, the judgment of foreclosure and sale entered against plaintiff Rosaria, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment. Additionally, the Settlement Agreement in the Surrogate's Court litigation operates as a final judgment on the merits for *res judicata* purposes and bars reconsideration of any claim that is based on the same facts as the probate proceeding for the probate of Henry Niles' will. Notably, plaintiffs' claims concerning the conservatorship action were subsumed in the Settlement

29

Agreement as the allegations concerned a conspiracy and scheme to manipulate and subvert the judicial system with respect to Henry Niles' will. Moreover, the present action satisfies the privity requirement for claim preclusion since Rosaria was a named party to the foreclosure proceeding and to the settlement agreement and is the party who commenced the instant action. Finally, the factual allegations in the state court action and the instant matter arose from the same transaction or series of events, namely, an alleged conspiracy and fraud resulting in the foreclosure of the subject premises, the state court's issuance of a Judgment of Foreclosure and Sale, and the subsequent purchase of the subject premises by defendant Wilshire at the foreclosure auction, as well as an alleged conspiracy and fraud resulting in a Settlement Agreement executed in state court concerning the probate of Henry Niles' estate, and plaintiffs presented (and could have presented all of their constitutional claims) in the state court foreclosure litigation and during the state probate proceedings.

The within action likewise meets the requisite criteria for claim preclusion under New Jersey law as a final judgment on the merits was entered in the Superior Court of New Jersey concerning the estate of Laura Niles, which was affirmed by appellate court, and which prevents reconsideration of any claim that is based on the same facts as the Third Amended Judgment of the Superior Court of New Jersey. Moreover, the present action satisfies the privity requirement for claim preclusion since plaintiffs were named parties in the Superior Court action and also commenced the instant action. Further, the factual allegations in the state court action and the instant matter arose from the same transaction or series of events, namely, an alleged conspiracy and fraud wherein the defendants manipulated and subverted the New Jersey State judicial system in the New Jersey litigation.

Hence, any of plaintiffs' federal claims against defendants that can be said to arise out of the allegations of the amended complaint concerning the conspiracy[26], including those allegations contained in Special Count IV (and corresponding allegations in Special Count VI), are barred by the doctrine of claim preclusion.[27]  Accordingly, the undersigned reports and recommends that

---

[26]The court notes that *res judicata* also bars plaintiffs' claims against defendants Parkinson, Selby, and Lamb and their privies, defendants Laura J. Niles Foundation, Inc. and the Henry E. Niles Foundation, Inc. that arise out of the same transaction or occurrences alleged by Bono in the 1999 EDNY action concerning an alleged scheme and conspiracy of defendants to seize control of Henry Niles' assets and Laura Niles' assets by unlawfully manipulating the New Jersey and New York judicial systems.  The district court entered a final judgment on the merits when it dismissed Bono's action pursuant to Fed. R. Civ. P. 12(b)(6), *see Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187-88 (2d Cir. 1996), which prevents reconsideration of any claims that were raised or could have been raised in the 1999 EDNY action.

[27]In addition, to the extent that plaintiffs' rambling in their amended complaint (and opposition papers) can be construed to allege a cause of action under the Federal Tort Claims Act ("FTCA") and/or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*") against any of the Federal Defendants based on their allegations of fraudulent and criminal activity by defendants in a vast CIA conspiracy designed to deprive plaintiffs of their constitutional rights and property rights in Laura and/or Henry Niles' estates and to foreclose on the mortgage to their residence, this court lacks subject matter jurisdiction over such claims.  With respect to a claim under the FTCA, 28 U.S.C. § 2401(b) provides that:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  Here, plaintiffs have not filed a claim under the FTCA in accordance with the applicable regulations against the United States, and at the very latest, plaintiffs' allegations of a vast government conspiracy by the CIA were made in February 2006, which is more than two years since the same allegations were made in the instant matter.  Thus, this court lacks subject matter jurisdiction over any such claim against the United States.  *See Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 82 (2d Cir. 2005); *see Morrow v. DuPont*, No. 08 CV 3083 (SJF)(WDW), 2010 WL 1005856, at *3 (E.D.N.Y. Mar. 15, 2010) ("The FTCA's exhaustion requirement is jurisdictional and not subject to waiver").

defendants motions to dismiss the federal claims on this alternative basis be granted.

### (2)     Collateral Estoppel (or Issue Preclusion)

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (internal quotation marks and citation omitted). "Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair

---

With respect to a claim against the individual defendants under *Bivens*, the applicable statute of limitations for this claim brought in federal courts in New York is three years. *Chin v. Bowen*, 833 F.2d 21, 24-25 (2d Cir. 1987). While state law supplies the statute of limitations period, "federal law determines when a federal claim accrues." *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998). "Under federal law, the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Rueda v. Kreth*, No. 01 CV 2819 (SJ), 2005 WL 323711, at *3 (E.D.N.Y. Feb. 7, 2005). As set forth *supra,* plaintiffs have alleged the existence of CIA driven conspiracy against them for years, and at the latest, plaintiffs alleged in their notice of removal in this court, cross claims of a CIA conspiracy against them. Inasmuch as more than three years has expired from the February 2006 allegations and the filing of the instant action in August 2009, any purported *Bivens'* claim is time-barred.

opportunity to adjudicate the claims involving those issues. *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citation omitted).

Similarly, "[u]nder New Jersey law, the doctrine of collateral estoppel operates to foreclose relitigation of an issue when the party asserting the bar shows that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding, (2) the issue was actually decided in the prior proceeding, (3) the court in the prior proceeding issued a final judgment on the merits, (4) the determination of the issue was essential to the prior judgment, and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Hogg's v. New Jersey*, 352 Fed. App'x 625, 629 (3d Cir. 2009).

Although it is clear that many of the issues concerning defendants' conduct and alleged underlying conspiracy were litigated in the (i) mortgage foreclosure proceedings, (ii) Surrogate Court litigation concerning the estate of Henry Niles and (iii) the New Jersey litigation concerning the estate of Laura Niles and would therefore be foreclosed in this action by collateral estoppel, the nearly indecipherable allegations set forth in plaintiffs' amended complaint make it impossible to determine the extent to which issue preclusion applies to plaintiffs' claims.

**(C)      Supplemental Jurisdiction**

To the extent that plaintiffs are attempting to allege any new state law claims in this action, the district court should decline to exercise supplemental jurisdiction over any such claims because the court lacks subject matter jurisdiction over plaintiffs' federal claims. *See* 28 U.S.C. § 1367(c)(3); *see also Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would be clearly inappropriate for the district court to retain jurisdiction over the state

law claims when there is no basis for supplemental jurisdiction."); *Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to the litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). "In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." *Swiatkowski*, 745 F. Supp.2d at 173 n.14 (internal quotation marks and citations omitted). Accordingly, the undersigned reports and recommends that the district court, in its discretion, "decline to exercise supplemental jurisdiction" over plaintiffs' state law claims as it "has dismissed all claims over which it has original jurisdiction." *Kolari*, 455 F.3d at 122 (internal quotation marks and citation omitted).

**(D)** **Litigation Injunction**

"The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (per curiam). In determining whether or not to restrict a litigant's future access to the courts, the Second Circuit has instructed courts to consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of

prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. United States Line, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* The undersigned finds that all of these factors support imposing restrictions on plaintiffs' access to the courts.

In the case at hand, plaintiffs have a well documented history of vexatious litigation involving duplicative lawsuits. In the Foreclosure Proceeding,[28] Bankruptcy Proceeding and Bono's 1999 EDNY action, plaintiffs have interposed, in support of purported claims or defenses, the same kinds of frivolous allegations that are alleged in the amended complaint. Plaintiff Rosaria engaged in repeated motion practice seeking stays and other relief based on her principal allegation that the CIA was targeting her and Bono. (*Santoro Decl.*, dated December 17, 2010, Exs. S, W, FF.) A review of the procedural history of plaintiffs' court filings make clear that their motivation in pursuing the litigations was in part to delay the foreclosure proceeding, sale of (and eviction from) the subject premises. Plaintiff Bono filed his 1999 EDNY litigation during the course of the New Jersey Litigation, which, as in the instant matter, sought to collaterally attack the judicial determinations in the Conservatorship Proceeding and the New Jersey Litigation.

---

[28]Plaintiff Rosaria asserted as a defense in the Foreclosure Proceeding (and in her motion papers) the same CIA conspiracy theory that is asserted in the amended complaint. (*Santoro Decl.*, dated December 17, 2010, Ex. N.) Notably, her answer in that proceeding was prepared by Bono, who was acting as her attorney. Rosaria attempted to remove the Foreclosure Proceeding to this court on the grounds of a CIA driven conspiracy. (*Id.*, Ex. O.) In the removal action, the district court questioned whether Bono was committing a crime by purporting to appear and represent Rosaria even though he was not licensed as an attorney to practice law in the State of New York. (*Id.*, Ex. P.)

Significantly, shortly after commencing the within action, plaintiffs initiated a lawsuit in Supreme Court, Suffolk County asserting the same allegations contained in the amended complaint in this action, which the Supreme Court dismissed on the grounds that plaintiffs had yet again raised the same arguments of fraud and conspiracy that were raised and decided in multiple actions in both state and federal courts and enjoined plaintiffs from filing any further actions in that court without prior leave of the court. (*Finkelstein Aff.,* dated March 17, 2011, Ex. A.) Although plaintiffs are proceeding *pro se* in this action, "a court's authority to enjoin vexatious litigation extends equally over *pro se* litigants and those represented by counsel, and a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff[s] [are] calling to vindicate [their] rights." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). The prolix and redundant pleadings make conclusory reference to a multitude of causes of action against multiple defendants as part of a vaguely defined CIA conspiracy which have caused the defendants to repeatedly incur unreasonable expenses in the defense of these unfounded allegations and have imposed upon the courts an undue burden and abuse of the judicial process. Finally, it is apparent that other sanctions will not deter plaintiffs from further vexatious and baseless litigation as plaintiffs have repeatedly demonstrated their unwillingness to accept unfavorable rulings by repackaging their claims with different labels against new (and prior) defendants and in new courts as part of a broadening conspiracy theory to relitigate previously rejected claims. Thus, although injunctive relief is an extraordinary remedy, the undersigned finds it is warranted in this case.

"In limiting a citizen's ability to litigate, a court should take special care to ensure that the

restrictions placed on the party are taken together, not so burdensome as to deny the litigant meaningful access to the courts." *Fitzgerald v. Field*, No. 99 Civ 2406, 1999 WL 1021568, at *5 (S.D.N.Y. Nov. 9, 1999) (internal quotation marks and citation omitted). Notably, the Second Circuit has found a filing injunction restricting a litigant's access to the court not to be overbroad where the litigant maintains the ability to assert a meritorious claim with prior court approval. *See Safir*, 792 F.2d at 25. Accordingly, the undersigned reports and recommends that the district court impose a filing injunction on plaintiffs prohibiting plaintiffs from filing any further lawsuits in the Eastern District of New York without prior permission of the court and prohibiting plaintiffs from filing any papers in connection with this case unless such papers are in response to those submitted by an adversary, or, when appropriate, to seek appellate review of a decision.

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on all parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      August 31, 2011

                             _____/s/_____
                             Arlene R. Lindsay
                             United States Magistrate Judge