# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-3638 (JFB) (ARL)

_____

## ROSARIA NILES AND SALVATORE A. BONO,

Plaintiffs,

VERSUS

## WILSHIRE INVESTMENT GROUP, LLC, ET AL.,

Defendants.

_____

### MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION
March 21, 2012

_____

JOSEPH F. BIANCO, District Judge:

On August 21, 2009, *pro se* plaintiffs Rosaria Niles ("Rosaria") and Salvatore A. Bono ("Bono") (together, "plaintiffs") brought this action, pursuant to a lengthy list of statutes and constitutional provisions,[1] against

---

[1] Plaintiffs cite the following provisions:

The Fifth and Fourteenth Amendment of the U.S. Constitution; (II.) The Civil Rights Act of 1871, 42 U.S.C. § 1983; (III.) Conspiracy against Rights; Title 18, Part 1, Chapter 13 § 241; (IV.) Truth in Lending Act, 15 U.S.C. § 1601 Subpart E, Section 226.34(a)(3) and (a)(4); (V.) Mail Fraud, 18 U.S.C. § 1341; (VI.) Wire Fraud 18 § 1343; (VII.) Ethics in Government Act, 28 U.S.C. § 591 et seq.;

(VIII.) Attempt and Conspiracy to commit Extortion – Title 18 U.S.C. § 1349; (IX.) Larceny and Embezzlement, Title 15 U.S.C. § 80a-36; (X.) Larceny and wrongful appropriation, Title 10, U.S.C. § 921. Art. 121; (XI.) Forgery, Title 10 U.S.C. §Art. 123; (XII.) Obstruction of criminal investigations, Title 18 U.S.C. § 1510; (XIII.) Obstruction of State or local law enforcement, Title 18 U.S.C. § 1511; (XIV.) Engaging in monetary transactions in property derived from specified unlawful activity, Title 18 U.S.C. § 1957; (XV.) Federal Tort Act 28 § U.S.C. §§ 2671 – 2680 and "Bivens Action;" (XVI.) Conspiracy to Defraud – Title 18 U.S.C. 1346; (XVII.) Torture 18 U.S.C. § 2340A; (XVIII.) Retaliating against a witness, victim, or an informant – Title 18 U.S.C. § 1513; (XIX.) Violent crimes in aid of racketeering

defendants Wilshire Investment Group, LLC, American Key, Inc., TierOne Bank, Geoffrey M. Parkinson ("Parkinson"), Leland C. Selby ("Selby"), James Lamb, Laura J. Niles Foundation, Inc., Henry E. Niles Foundation, Inc., Central Intelligence Agency, CIA Officer Mitchell E. Kline, CIA Officer Lydia Spellman, CIA Officer John T. Martinez, and their superior commanding Officers John Doe and/or Jane Doe, and the U.S. Attorney for the Eastern District of New York. (collectively "defendants"). Plaintiffs allege that defendants have operated as CIA operatives as part of a vast scheme and conspiracy to "wrest control of the large estates of citizens living along the eastern seaboard." (Amended Complaint, Nov. 1, 2010, ECF No. 88, at ¶ 16.) Plaintiffs maintain that defendants executed this scheme by manipulating and subverting several earlier judicial proceedings to which plaintiffs were parties.

Before the Court is a Report and Recommendation ("R&R") from Magistrate Judge Arlene Lindsay, as well as plaintiffs' objections to the R&R. The R&R recommended that all defendants' motions to dismiss be granted. Furthermore, the R&R recommended that the District Court impose

---

activity – Title 18 U.S.C. § 1959; (XX.) Peonage – Title 18 U.S.C. 1581 committed in furtherance of (a.) Racketeering activity Title 18 U.S.C. § 1959, (b.) Kidnapping – Title 18 U.S.C. § 1201, (c.) Unlawful imprisonment, kidnapping, and custodial interference in violation of N.Y.S. Penal Law § 135.50, (d.) Custodial Interference in the first degree, N.Y.S. Penal Law § 135.50 (2), (e) N.Y.S. Penal Law § 260.10, "Endangering the Welfare of a child," and; (XXI.) Wilful violation of duty under Title 28, Section 507 U.S.C.; (XXII.) Conspiracy to commit Murder and Murder, Title 10 U.S.C. 918, Art. 118.

(R&R at 12-13.)

a filing injunction on plaintiffs prohibiting plaintiffs from filing any further lawsuits in the Eastern District of New York without permission of the court.

For the reasons that follow, the Court adopts in full Magistrate Judge Lindsay's thorough and well-reasoned R&R, except that the Court narrows the recommended language of the injunction to make it pertain only to the subject matter of the instant litigation (and the other prior lawsuits described *infra*).

## I. BACKGROUND

As relevant background, the instant action and many of the plaintiffs' earlier judicial proceedings relate to events concerning the estates of Laura J. Niles and her brother Henry E. Niles, who inherited a large fortune from their father. Rosaria married Henry Niles in 1992, and, in 1997, Laura Niles amended her will and modified certain trust agreements, nominating Bono, who is Rosaria's son, as executor of her will and trustee of her trusts. (R&R at 2-4.)

The instant action is the latest in a series of judicial proceedings that includes:

1. An action commenced January 20, 1998 in New Jersey Superior Court that, among other things, removed plaintiff Bono as trustee for Laura Niles's trusts on the grounds that he had embezzled and misused her assets and that he had unduly influenced her. (R&R at 4.)

2. A proceeding in New York State Surrogate Court to probate the Last Will and Testament of Henry E. Niles. Rosaria filed various objections to the probate of the will and commenced a proceeding by Petition verified September 17, 1998 to revoke preliminary letters testamentary issued to

Laura Niles's friend and financial advisor, Parkinson, and Parkinson's attorney, Selby, and also commenced a proceeding by Petition verified December 20, 1999 against the estate of Henry E. Niles to compel payment of a claim. (R&R at 5.)

3. A lawsuit filed on September 29, 1999 by Bono in U.S. District Court for the Eastern District of New York ("E.D.N.Y.") against several defendants, including, for example, counsel for Parkinson and Selby, a New Jersey Superior Court Judge, a Superior Court Surrogate, and a court-appointed guardian *ad litem* in the New Jersey probate action. The suit alleged that defendants conspired to manipulate and subvert the judicial systems of the states of New York and New Jersey in an effort to reap financial gains at the expense of Bono and elderly citizens of New York and New Jersey. Bono amended his complaint to allege that Selby and Parkinson acted in concert with Joseph J. Kunzeman, who was conservator of Henry Niles's property, to manipulate the judicial system to avoid losing control over the Niles's assets. (R&R at 7.)

4. A foreclosure proceeding instituted by TierOne on July 11, 2005 against Rosaria to foreclose the mortgage held on Rosaria's residence located at 223 Lakeview Avenue West in Brightwaters, New York. Rosaria filed a notice of removal of the foreclosure proceeding to the E.D.N.Y. and asserted cross-claims against Parkinson, Selby, and others, alleging, *inter alia*, that various CIA officers persecuted the Niles family. Judge Joanna Seybert remanded the action to New York Supreme Court, Suffolk County, which granted summary judgement to TierOne, entered a judgment of foreclosure, and appointed a referee to sell the mortgaged premises at public auction. Rosaria made numerous attempts to stay enforcement of the

judgement of foreclosure and sale, which the Appellate Division, Second Department twice denied in January 2008. Rosaria then attempted to stay the foreclosure by filing petitions in Bankruptcy Court. After the automatic stay was lifted, Rosaria made two unsuccessful applications to reinstate the stay, then filed another motion in the Appellate Division, Second Department, seeking, *inter alia*, another stay of the foreclosure sale pending appeal. The Appellate Division denied the motion. Rosaria filed another application in Supreme Court, Suffolk County seeking, *inter alia*, an order staying the foreclosure sale and vacating the judgment of foreclosure. The application was denied, and the premises were sold at a foreclosure sale to Wilshire and American Key on April 8, 2009. (R&R at 8-10.)

On August 21, 2009, plaintiffs commenced the instant action. On September 2, 2009, plaintiffs initiated another action in Supreme Court, Suffolk County, seeking principally the same relief as in the instant action. (R&R 10-11.)

## II. PROCEDURAL HISTORY

On August 21, 2009, *pro se* plaintiffs filed their complaint. On April 26, 2010, defendants Geoffrey M. Parkinson, Leland C. Selby, James Lamb, the Laura J. Niles Foundation, Inc., and the Henry E. Niles Foundation ("the Foundation Defendants") filed a motion to dismiss. On April 29, 2010, TierOne filed a motion to dismiss. On April 30, 2010, Wilshire Investment Group, LLC, and American Key, Inc. ("defendants Wilshire and American Key") filed a motion to dismiss. On April 30, 2010, United States of America/Central Intelligence Agency, the U.S. Attorney's Office for the Eastern District of New York, Mitchell E. Kline, John T.

Martinez, Lydia Spellman, and their commanding superior CIA officers, John Doe and/or Jane Doe ("the Federal Defendants") filed a motion to dismiss.

By Order dated September 1, 2010, the Court referred the motions to Magistrate Judge Lindsay for a report and recommendation. On September 17, 2010, Magistrate Judge Lindsay terminated the above four motions to dismiss and implemented the bundle rule. On November 1, 2010, plaintiffs filed an amended complaint.

On March 18, 2011, the Federal Defendants, the Foundation Defendants, and Defendants Wilshire and American Key each filed motions to dismiss. By Affirmation dated March 17, 2011, TierOne joined in the motions brought by the Federal Defendants and the Foundation defendants. On March 18, 2011, in accordance with the bundle rule, plaintiffs filed a Memorandum in Opposition, and defendants Wilshire and American Key filed a reply.

On August 31, 2011, Magistrate Judge Lindsay issued the R&R recommending that all defendants' motions to dismiss be granted and recommending that the District Court impose a filing injunction on plaintiffs. The R&R further instructed that any objections to the R&R be submitted within fourteen (14) days of receipt. (R&R at 37.) On September 19, 2011, plaintiffs filed an objection to the R&R. (Pls.' Objections to the R&R, Sept. 19, 2011, ECF No. 163 ("Obj.").) The Foundation Defendants filed a Memorandum in Opposition to the plaintiffs' objection on October 3, 2011.

### III. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objection" is made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y. 1997) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)); *Santana v. United States*, 476 F. Supp. 2d 300, 302 (S.D.N.Y. 2007). Where the report is dispositive of the case, the Court reviews *de novo* the portions to which objections have been filed. *See* Fed. R. Civ. P. 72(b); *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008) (noting that a report recommending remand was dispositive).

### IV. ANALYSIS

The Court has conducted a review of the full record, including, among other things, the complaint, the parties' respective submissions in connection with the parties' motions, as well as the R&R, applicable law, and plaintiffs' objections. Having reviewed *de novo* all portions of the R&R to which plaintiffs specifically object, and having reviewed the remainder of the R&R for clear error, the Court adopts the Report in its entirety (with the exception of narrowing the language of the litigation injunction), for the reasons set forth therein and below.[2]

Plaintiffs asserts a number of objections to

---

[2] Even if the Court reviewed the entire R&R under a *de novo* standard, the Court would reach the same conclusion for the reasons set forth in the thorough R&R.

the R&R's recommendation that the Court grant all defendants' motions to dismiss. In particular, plaintiffs contend that Magistrate Judge Lindsay erred because (1) the R&R is "fraudulent and predicated on numerous acts of perjury, knowingly false statements, half-truths, distortions of the truth and fruit of corruption adopted from defendants' fraudulent motion papers" (Obj. at 38.); (2) Magistrate Judge Lindsay did not conduct the required proceedings in accordance with Rule 72 of the Federal Rules of Civil Procedure and erred in not granting plaintiffs' request for a hearing under Rules 11 and 16 of the Federal Rules of Civil Procedure (Obj. at 41.); (3) Magistrate Judge Lindsay "refused to acknowledge the documentary evidence, concurrent validations, sworn accounts, and written confirmations from CIA and Justice Department underscoring defendant United States-CIA's interest in (and support of) their co-defendants" (Obj. at 45.); (4) Magistrate Judge Lindsay did not follow the Standard of Review (Obj. at 49.); (5) the R&R "is ripe with knowingly false descriptions" of the plaintiffs and the amended complaint (Obj. at 51.); (6) the R&R is fraudulent in that it "underscores Magistrate Judge Lindsay's conflict of interest, partiality, and negligence" (Obj. at 53.); (7)-(10) the background section of the R&R with respect to the New Jersey litigation, the New York State Surrogate's Court litigation, and the Foreclosure and Bankruptcy Proceedings, is false (Obj. at 54, 57, 58.); (11)-(14) *Rooker-Feldman* doctrine does not apply to the New York state foreclosure proceeding, the New York State Surrogate's Court Litigation, the New Jersey State Court litigation, and the New York State Court Conservatorship litigation (Obj. at 59, 66, 67.); (15) plaintiffs' claims are not barred by the doctrines of claim and issue preclusion (Obj. at 67.); (16) plaintiffs' federal tort claim

is not time-barred and Magistrate Judge Lindsay "intentionally and maliciously inclined to disregard extensive evidence underscoring the plaintiffs['] timely filing of their federal tort claims" (Obj. at 72.); (17) plaintiffs' first amended complaint states claims that are actionable (Obj. at 86.); (18) plaintiffs' claims under 42 U.S.C. § 1983 are "firmly grounded in evidence" (Obj. at 87.); (19) Magistrate Judge Lindsay's "decision to partake in supporting corruption would go so far as to adopt knowingly false and perjury-based statements made by defendants' attorney and set aside evidence underscoring" certain violations (Obj. at 92.); and (20) there is no merit to the recommendation for "a litigation injunction" as it is "predicated entirely on Magistrate Judge Lindsay's decision to partake in supporting corruption" (Obj. at 96.).

As set forth below, these arguments are wholly without merit.[3]

### A. Substantive Objections

Plaintiffs object that the *Rooker-Feldman* doctrine does not apply to the New York State foreclosure proceeding, the New York State Surrogate's Court Litigation, the New Jersey State Court litigation, and the New York State Court Conservatorship litigation, (Objections #11, 12, 13, 14.), and that plaintiffs' claims are not barred by the doctrines of claim and issue preclusion. (Objection #15.)

---

[3] Although the Court has considered each and every one of plaintiffs' objections, the Court has not addressed individually every objection lodged by plaintiffs because they are repetitive and completely lacking in merit. Instead, the Court has grouped the objections by topic and addresses them briefly below. For the remainder of the objections, the Court rejects them in their entirety and relies on the analysis in Magistrate Judge Lindsay's thorough R&R.

In her well-reasoned and thorough R&R, Magistrate Judge Lindsay fully explained the bases for her decision, which include:

1. The *Rooker-Feldman* doctrine operates to bar all of plaintiffs' claims in connection with the New York State Foreclosure proceeding, the New York State Surrogate's Court litigation, the New Jersey State Court litigation, and the New York State Court Conservatorship litigation.

In the instant action, plaintiffs are simply attempting for this Court to review, reject, and overturn the results of these state court actions. For each state proceeding, the requirements of the *Rooker-Feldman* doctrine, set forth in the R&R at pages 20-21, are satisfied. Accordingly, plaintiffs' claims in connection with the state proceedings – for example, that the defendants executed their vast scheme and conspiracy by manipulating and subverting the judicial system in these proceedings – are barred by *Rooker-Feldman*.

2. *Res Judicata* (or claim preclusion) operates to bar plaintiffs' federal claims. The instant action meets the criteria, set forth in the R&R at pages 27-29, for claim preclusion under New York and New Jersey law.

With respect to the New York proceedings, a final judgment on the merits was entered in the Supreme Court, Suffolk County litigation, and the Settlement Agreement in Surrogate's Court operates as a final judgment. The privity requirement is satisfied because Rosaria Niles was a named party in both cases. Finally, the factual allegations in the instant case and in the state court actions arise from the same transaction or series of events, namely an alleged fraud and conspiracy resulting in the foreclosure of the subject premises, the state court's issuance

of a Judgment of Foreclosure and Sale, and the subsequent purchase of the subject premises by defendant Wilshire at the foreclosure auction, as well as an alleged conspiracy and fraud resulting in the Settlement Agreement executed in state court concerning the probate of Henry Niles' estate.

As to the New Jersey proceedings, a final judgment on the merits was entered in Superior Court of New Jersey concerning the estate of Laura Niles. Privity is satisfied because the plaintiffs were named parties in the Superior Court action. Finally, the factual allegations in the state court action and the instant matter arose from the same transaction or series of events, namely, an alleged conspiracy and fraud wherein the defendants manipulated and subverted the New Jersey State judicial system in the New Jersey litigation.

Accordingly, the R&R properly concluded that plaintiffs' federal claims were barred by *res judicata*.

3. Collateral Estoppel (or issue preclusion) operates to bar many of plaintiffs' actions because many of these issues were litigated in (i) the mortgage foreclosure proceeding, (ii) Surrogate Court litigation concerning the estate of Henry Niles, and (iii) the New Jersey litigation concerning the estate of Laura Niles. The R&R notes, however, that "the nearly indecipherable allegations set forth in plaintiffs' amended complaint make it impossible to determine the extent to which issue preclusion applies to plaintiffs' claims." (R&R at 33.)

Many of plaintiffs' objections are premised on the argument that the R&R is fraudulent, is based on false statements, and does not take into account various

6

documentary evidence. (Objections #1, 3, 7, 8, 9, 10, 18, 19.) A corollary to this argument is that Magistrate Judge Lindsay did not accept all of the complaint's allegations as true. (Objections #4, 5, 17.) Further, plaintiffs object that the R&R was fraudulent because of Magistrate Judge Lindsay's "conflicts of interest, partiality, and negligence." (Objection #6.)

The Court finds that Magistrate Judge Lindsay properly adhered to the standard set forth in *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) and credited all of plaintiffs' allegations as true. *See id.* ("the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff"). Magistrate Judge Lindsay properly found these claims to be barred by the *Rooker-Feldman* doctrine, res judicata, and/or collateral estoppel.

To the extent that the plaintiffs argue that Magistrate Judge Lindsay exhibited bias or partiality in her rulings, or should have recused herself, there is absolutely no evidence to support those allegations.

Plaintiffs also contend that their federal tort claim is not time-barred. (Objection #16.) As Magistrate Judge Lindsay explained in the R&R, under 28 U.S.C. § 2401(b), a tort claim against the United States is barred "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." (R&R at 31 n.27.) At the very latest, plaintiffs made allegations in February 2006 of a vast government conspiracy orchestrated by the CIA. Plaintiffs failed to file a claim against the United States

under the Federal Tort Claims Act in accordance with the applicable regulations, and more than two years have passed since plaintiffs made these identical allegations. (*Id.*) Thus, the R&R properly found that the federal tort claim is time-barred.

B. Procedural Objections

Plaintiffs allege that Magistrate Judge Lindsay did not conduct the required proceedings in accordance with Federal Rule of Civil Procedure 72 and erred in not granting plaintiffs' request for a hearing under Federal Rules of Civil Procedure 11 and 16. (Objection #2.) Rule 72 directs magistrate judges to "promptly conduct the required proceedings" when dispositive or non-dispositive matters are referred to him or her. Fed. R. Civ. P. 72. Upon review of the docket and the record, this Court concludes that Magistrate Judge Lindsay promptly conducted all required proceedings concerning dispositive and non-dispositive matters. Rule 11 generally sets forth requirements for parties concerning pleadings, motions, papers, and representations to the courts. Rule 11 also permits the court, in certain circumstances, to impose sanctions. Fed. R. Civ. Proc. 11. This rule, therefore, does not even apply to a court's decision about whether to hold a hearing. In any event, Magistrate Judge Lindsay has fully complied with Rule 11 throughout the case. Rule 16 grants discretion to a court to order attorneys or parties to appear at pretrial conferences, and permits the court discretion in determining what matters to consider at a pretrial conference. Fed. R. Civ. Proc. 16. Rule 16 also requires judges to issue a scheduling order after certain events. *Id.* Throughout the case, Magistrate Judge Lindsay fully adhered to the precepts of Rule 16.

Accordingly, the Court finds no merit to plaintiffs' objection that Magistrate Judge Lindsay violated the Federal Rules of Civil Procedure.[4]

### C. Litigation Injunction

Finally, plaintiffs argue that there is no merit to Magistrate Judge Lindsay's recommendation that this Court impose a litigation injunction. (Objection #20.) As set forth below, after *de novo* review, the Court agrees with Magistrate Judge Lindsay that a litigation injunction is warranted.

Magistrate Judge Lindsay thoroughly documented plaintiffs' history of vexatious litigation involving duplicative lawsuits that served to burden numerous other parties and to burden the efficient administration of the courts. (*See* R&R at 35-36.) Applying the factors set forth in *Safir v. United States Line, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986), this Court agrees that injunctive relief is warranted in this case. (*See* R&R at 34-35.) Specifically, as Magistrate Judge Lindsay explained:

> In the case at hand, plaintiffs have a well documented history of vexatious litigation involving duplicative lawsuits. In the Foreclosure Proceeding, Bankruptcy Proceeding and Bono's 1999 EDNY action, plaintiffs have interposed, in

support of purported claims or defenses, the same kinds of frivolous allegations that are alleged in the amended complaint. Plaintiff Rosaria engaged in repeated motion practice seeking stays and other relief based on her principal allegation that the CIA was targeting her and Bono. (*Santoro Decl.*, dated December 17, 2010, Exs. S, W, FF.) A review of the procedural history of plaintiffs' court filings make clear that their motivation in pursuing the litigations was in part to delay the foreclosure proceeding, sale of (and eviction from) the subject premises. Plaintiff Bono filed his 1999 EDNY litigation during the course of the New Jersey Litigation, which, as in the instant matter, sought to collaterally attack the judicial determinations in the Conservatorship Proceeding and the New Jersey Litigation.

Significantly, shortly after commencing the within action, plaintiffs initiated a lawsuit in Supreme Court, Suffolk County asserting the same allegations contained in the amended complaint in this action, which the Supreme Court dismissed on the grounds that plaintiffs had yet again raised the same arguments of fraud and conspiracy that were raised and decided in multiple actions in both state and federal courts and enjoined plaintiffs from filing any further actions in that court without prior leave of the court. (*Finkelstein Aff.*, dated March 17, 2011, Ex. A.) Although plaintiffs are proceeding *pro se* in this action, "a court's authority to enjoin vexatious litigation extends equally over *pro se* litigants and those represented by counsel, and a court's

---

[4] Additionally, the Court adopts Magistrate Judge Lindsay's recommendation that it should decline, in its discretion, to exercise supplemental jurisdiction over any new state law claims because the court lacks subject matter jurisdiction over plaintiffs' federal claims under *Rooker-Feldman* and the claims are being dismissed on the various grounds discussed *supra*. *See* R&R at 33-34; 28 U.S.C. § 1367(c)(3); *see also Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff[s] [are] calling to vindicate [their] rights." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). The prolix and redundant pleadings make conclusory reference to a multitude of causes of action against multiple defendants as part of a vaguely defined CIA conspiracy which have caused the defendants to repeatedly incur unreasonable expenses in the defense of these unfounded allegations and have imposed upon the courts an undue burden and abuse of the judicial process. Finally, it is apparent that other sanctions will not deter plaintiffs from further vexatious and baseless litigation as plaintiffs have repeatedly demonstrated their unwillingness to accept unfavorable rulings by repackaging their claims with different labels against new (and prior) defendants and in new courts as part of a broadening conspiracy theory to relitigate previously rejected claims. Thus, although injunctive relief is an extraordinary remedy, the undersigned finds it is warranted in this case.

"In limiting a citizen's ability to litigate, a court should take special care to ensure that the restrictions placed on the party are taken together, not so burdensome as to deny the litigant meaningful access to the courts." *Fitzgerald v. Field*, No. 99 Civ 2406, 1999 WL 1021568, at *5 (S.D.N.Y. Nov. 9, 1999) (internal quotation marks and citation omitted).

Notably, the Second Circuit has found a filing injunction restricting a litigant's access to the court not to be overbroad where the litigant maintains the ability to assert a meritorious claim with prior court approval. *See Safir*, 792 F.2d at 25. Accordingly, the undersigned reports and recommends that the district court impose a filing injunction on plaintiffs prohibiting plaintiffs from filing any further lawsuits in the Eastern District of New York without prior permission of the court and prohibiting plaintiffs from filing any papers in connection with this case unless such papers are in response to those submitted by an adversary, or, when appropriate, to seek appellate review of a decision.

(R&R at 34-37.)

This Court agrees entirely with Magistrate Judge Lindsay's findings as to each of the factors and concludes that a litigation injunction is warranted. However, the Court is narrowing the recommended language of the injunction to make it pertain only to the subject matter of the instant litigation (and the other prior lawsuits described *supra*).[5] Accordingly, this Court hereby enjoins Rosaria Niles and Salvatore A. Bono from instituting, without prior permission of the Court, any new action in the United States District Court for the Eastern District of New York that is based on, or relates in any way to, events concerning the estates of Laura Niles and Henry E. Niles, or that is based, on or relates in any way to, the foreclosure

---

[5] The Court also notes that the other language in the recommended injunction as to additional filings in the instant action is unnecessary at this juncture because this Memorandum and Order closes this case.

proceedings on the mortgage held on the residence at 223 Lakeview Avenue West in Brightwaters, New York.[6] This injunction is consistent with injunctions imposed in other cases, and approved by the Second Circuit, under similar circumstances. *See, e.g.*, *Robert v. Dep't of Justice*, 439 F. App'x 32, 35 (2d Cir. 2011), *cert. denied* 80 U.S.L.W. 3478 (U.S. Feb. 21, 2012); *Wynn v. AC Rochester Gen. Motors Corp.*, 96 F. App'x 768, 769 (2d Cir. 2004); *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990). Of course, this injunction pertains only to this Court – namely, the United States District Court for the Eastern District of New York – and does not preclude appellate review of any of this Court's decisions.

## V. Recusal

The plaintiffs also make a motion for the undersigned to recuse himself. (*See* Letter Seeking Recusal, Sept. 12, 2011, ECF No. 162.) There is no basis for recusal under the relevant statute. *See* 28 U.S.C. § 455. Accordingly, plaintiffs' motion for recusal is

---

[6] The Court has considered whether to limit the litigation injunction to particular defendants, but, given plaintiffs' history of switching defendants and adding numerous defendants, an injunction as to subject matter is warranted. *See Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 30 (2d Cir. 2003) (per curiam) (affirming imposition of litigation injunction barring plaintiffs "from pursuing further federal litigation with respect to the Premises"); *Satterfield v. Pfizer, Inc.*, 04-CV-3782, 98-CV-8040, 2005 U.S. Dist. LEXIS 14923, at *5, 48 (S.D.N.Y. July 18, 2005) (adopting Report and Recommendation imposing litigation injunction "barring [plaintiff] from instituting any new action that relates in any way to the scrip at issue in his suits or to obtaining an interest in the shares in Pfizer or any related entity"), *aff'd* 208 F. App'x 59 (2d Cir. 2006); *see also Safir*, 792 F.2d at 25 (barring plaintiff from "commencing additional federal court actions relating in any way to defendants' pricing practices or merchant marine subsidies during the 1965-1966 period without first obtaining leave of the district court").

denied.

## VI. Conclusion

Having conducted a *de novo* review of all portions of the R&R to which plaintiffs specifically object, and having reviewed the remainder of the R&R for clear error, the Court adopts the R&R in its entirety, except that the Court narrows the language of the litigation injunction. Accordingly, for the reasons set forth in the R&R and this Memorandum and Order, all defendants' motions to dismiss are granted, and the complaint is dismissed. To the extent plaintiffs are attempting to raise any new state law claims, the Court declines to exercise supplemental jurisdiction over any state law claims. IT IS FURTHER ORDERED that this Court hereby enjoins Rosaria Niles and Salvatore A. Bono from instituting, without prior permission of the Court, any new action in the United States District Court for the Eastern District of New York that is based on, or relates in any way to, events concerning the estates of Laura Niles and Henry E. Niles, or that is based on, or relates in any way to, the foreclosure proceedings on the mortgage held on the residence at 223 Lakeview Avenue West in Brightwaters, New York. The Clerk of the Court shall enter judgment accordingly and close the case.

A copy of this Order has been mailed to *pro se* plaintiffs.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 21, 2012
Central Islip, New York

* * *

*Pro se* plaintiffs live at 216 Captains Way, West Bay Shore, New York 11706. The Federal Defendants are represented by Diane C. Leonardo-Beckmann, United States Attorneys Office, 610 Federal Plaza, Central Islip, New York 11722. The Foundation Defendants are represented by Frank T. Santoro, Farrell Fritz, PC, 1320 Rxr Plaza, Uniondale, New York 11556. Defendants American Key and Wilshire Group are represented by Mark R. Knuckles, Knuckles, Komosinski & Elliott, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523. TierOne Bank is represented by Edward Richard Finklestein, Tarter Krinsky & Drogin, LLP, 1350 Broadway, 11th Floor, New York, New York 10018.